(No. 25870.—

THE PEOPLE *ex rel.* John Toman, County Collector, Appellant, *vs.* THE ADVANCE HEATING COMPANY, Appellee.

*Opinion filed February 14, 1941—Rehearing denied April 8, 1941.*

Thomas J. Courtney, State's Attorney, and Barnet Hodes, Corporation Counsel, (Joseph F. Grossman, Otho S. Fasig, J. Herzl Segal, and Norman N. Eiger, of counsel,) for appellant.

Adelbert Brown, Robert N. Holt, and Pomeroy Sinnock, for appellee.

Mr. Justice Wilson delivered the opinion of the court:

A judgment of the county court of Cook county sustained the objections of the defendant, the Advance Heating Company, to an application of the county collector for a judgment against and an order for the sale of real estate for the non-payment of certain taxes for the year 1937 levied by the city of Chicago. The county collector prosecutes this appeal.

Included in the 1937 appropriation bill were items for estimated amounts of 1937 taxes for the non-payment of

which real estate will be forfeited, and estimated amounts of such taxes which will be abated. These items appear in the corporate fund, the library fund, the library building fund, and the municipal tuberculosis sanitarium fund. The specific amounts are not important here.

The appropriations in controversy were made pursuant to section 2a of article 7 of the Cities and Villages act, (State Bar Stat. 1935, chap. 24, par. 93, p. 354,) which, among other things, provides that the annual appropriation bill shall set forth estimates, by classes, of all current assets, and liabilities of each fund as of the beginning of the fiscal year, the amounts of such assets available for appropriation in such year, either for expenditures or charges to be made or incurred or for liabilities unpaid at the beginning of the year; that estimates of taxes to be received from prior years shall be net, after deducting amounts estimated to be sufficient to cover loss and cost of collection, forfeitures and abatements in the amount of such taxes extended or to be extended. It further provides that the appropriation ordinance shall specify the objects and purposes for which appropriations are made and the amount appropriated for each object or purpose, and shall include, among other enumerated items: "(e) an amount or amounts estimated to be sufficient to cover the loss and cost of collecting taxes to be levied for such fiscal year and also the amounts of taxes so levied for the non-payment of which real estate shall be forfeited to the State and abatements in the amounts of such taxes as extended upon the collector's books."

The items in controversy come squarely within the terms of the statute. The claims of the defendant are that abated taxes are illegal taxes and, accordingly, cannot be made up by a levy on other taxpayers; that the appropriation for forfeitures was to replace taxes which should be paid by others; that taxes for these items are, therefore, not for a corporate purpose, and they violate section 9 of

article 9 of the constitution of this State, which restricts legislation delegating taxing powers to the levy of taxes for corporate purposes; that such taxes also violate the due process clauses of the Federal and State constitutions; and that, as the appropriations are not for a corporate purpose, the statute, to the extent that it authorizes them, is invalid, and the tax is illegal. Violation of these particular constitutional provisions is the only issue involved.

Defendant concedes that deductions for forfeitures and abatements in the taxes of prior years are proper as a "reserve," but contends that such appropriations for a current year are quite distinct from the reserve or diminution of assets in prior years, and that there is no co-relationship between them. We fail to observe any such distinction. The amounts included in the appropriation bill or the levy for forfeitures and abatements, in either case, represent taxes which it is estimated will not be collected during the current year. The taxes for a forfeiture of prior years are as likely to be paid during the current year as is the tax for a forfeiture occurring during the current year. Which is the more likely to happen cannot be foretold, and, for this reason, an estimate is provided for, applicable to either case. It is well known that tax levies are not collected in full during any current year, and if there are any abatements the full amount of the taxes is never collected. The manifest purpose of the provision for taking into consideration estimates of loss and cost of collection, forfeitures and abatements is, that if a municipality needs a certain sum for certain expenses of a current year, it may so appropriate and levy taxes that the amount received during the particular year will equal the required sum, provided, of course, the levy is within the statutory limit. Otherwise, the municipality could never meet its obligations on time, but would be constantly behind, and would be obliged to include the deficit in the levy of the succeeding year, the effect of which upon the taxpayer would be the same as if

the levy for a current year produced the amount needed for that year. This applies with equal force to forfeitures and abatements in a current year as it does to forfeitures and abatements of prior years.

Obviously, an appropriation and levy for estimated forfeitures and abatements is not a double levy of such amounts to be expended by the municipality. On the contrary, such levies contemplate they will merely operate to collect the full amount of the levy to which they apply, and prevent a deficit they would otherwise occasion. This keeps the levy in balance.

So far as appropriations and levies are concerned, the essential difference between forfeitures on the one hand, and loss and cost of collection and abatements on the other, is that the latter two classes constitute funds which will never be collected, while, because taxes on forfeited lands may later be paid, they cannot be classified as losses. We held in *People* v. *Schweitzer,* 366 Ill. 568, and *People* v. *Sandberg Co.* 282 id. 245, that they cannot be included in a loss and cost item. But, in principle, so far as the current year is concerned, each of the three classes represents an amount that will not be collected during, and is lost to, that year. In *People* v. *Schweitzer, supra,* where an item for "loss and cost of collection, abatements, etc.," occurred in the appropriation but not in the levy, we held that it was not for money to be expended, and was merely a balancing item, citing the parallel case of *People* v. *Diversey Hotel Corp.* 364 Ill. 298. By an abatement or forfeiture in a current year, there is no disadvantage to the taxpayer who pays his taxes in full and no discrimination between him and the taxpayer who procures an abatement. The latter must still pay on the actual value of his property at the same rate levied upon the property of the taxpayer who pays the full amount levied. The result is the same as if the property on which the tax is abated had been subjected in the first place to the rate on its actual value.

The case at bar bears no relation to cases of double taxation cited by defendant. Double taxation means taxing twice, for the same purpose, in the same year, some of the property in the territory in which the tax is laid, without taxing all of it a second time. (Cooley on Taxation, (4th ed.) sec. 223; *Pennsylvania Transit* v. *Commonwealth,* 165 Va. 614.) Only one levy was made in this case, and it operates alike on all property in the taxing district. Since the levy does not contemplate the collection of any amount abated or on account of property forfeited, the resultant tax is for a corporate purpose. The claim that these items, and the statute authorizing their inclusion in the appropriation bill, are unconstitutional cannot be upheld. The trial court erred in sustaining the objections to them.

The city levied a rate of .137417 for municipal tuberculosis sanitarium purposes, which would produce $2,500,000 under the original appropriation and $350,000 under a supplemental appropriation, aggregating $2,850,000. The trial court sustained objections to all but .07 of the rate, invalidating $1,400,235 of the total levy. The authority for the $2,500,000 levy is the Municipal Tuberculosis Sanitarium act, as amended in 1935, (Laws of 1935, p. 505,) authorizing a levy at seven-tenths of one mill or at a rate that will produce $2,500,000, whichever is greater, and the authority for the supplemental levy of $350,000 is the amendatory act of 1937, (Laws of 1937, p. 408,) increasing the permissible amount to $2,850,000. Defendant claims that under those acts the levy was illegal because not submitted to a referendum.

The original act providing for establishing and maintaining a municipal tuberculosis sanitarium was enacted in 1908. (Laws 1907-8, p. 43.) It is still in effect, as amended from time to time. As originally passed, it authorized cities and villages to establish and maintain a public tuberculosis sanitarium and to levy a tax not to exceed

four mills on the dollar, and provided for a referendum on the question of levying an annual tax for the establishment and maintenance of such sanitariums. Provision was made for specifying the rate in the notice of election, and giving the form of the question to be voted on as "For a ....mill tax for a public tuberculosis sanitarium," and "Against a....mill tax for a public tuberculosis sanitarium." The act was amended in 1909, (Laws of 1909, p. 143,) limiting the rate to one mill, providing for a referendum, and changing the question to be voted upon to read, "For the levy of a tax for a public tuberculosis sanitarium" and "Against" such a tax, without specifying the rate. Thereupon, the city of Chicago submitted the proposition at an election and, upon its adoption, established a municipal tuberculosis sanitarium, and has since levied a tax under the various amendments which changed the rates. From the time it was first enacted, the statute has provided that when a certain number of legal voters shall present a petition for an annual tax for the establishment and maintenance of a public tuberculosis sanitarium, an election shall be called to vote upon the question. The referendum required is upon the question of a tax not only for maintenance, but for establishing a sanitarium to be submitted as one proposition. There is no provision in the statute for a referendum for maintenance only, or for submitting an increase or any change in the tax rate to a referendum. The city of Chicago duly submitted to a referendum the question required by the statute and there is no requirement in the statute that it do so again. The manner in which the question of an increased rate could be submitted is not suggested by defendant. Sustaining the objection to this item was error.

The trial court also sustained objections to a levy, "For payment of judgments entered prior to January 1, 1935, and interest thereon, $1,250,000." Defendant contends this item is not properly itemized and is, in part, for purposes

previously levied for, thereby exceeding the statutory limits for the years 1928 to 1932. The levy is specifically authorized by the act of 1930 (Ill. Rev. Stat. 1939, chap. 24, par. 697a) which authorizes such a levy not exceeding $1,250,000, for the payment of such judgments, in addition to the maximum of all other city taxes authorized by law. Whether the levy exceeds the statutory limit in the years 1928 to 1932 is immaterial. Decisions holding the statutory limit cannot be exceeded by permitting judgments to be entered, followed by a tax levy, in an attempt to evade the statute, have no application here. The fact that levies have been made in prior years for the payment of such judgments, upon which an amount remains unpaid, does not constitute double taxation. (*People* v. *Crane,* 372 Ill. 228.) A levy to pay judgments is for a single purpose, as much so as a levy to pay tax anticipation warrants, which has been held to be a single purpose in *People* v. *Schiek,* 368 Ill. 353. In the *Schiek case* we said that an appropriation for such warrants is not unlike an appropriation for judgments against the city. In *People* v. *Eastern Illinois and Missouri Railroad Co.* 335 Ill. 245, where a levy for paying the cost of constructing, reconstructing and. repairing highways, including the village's portion of the work done by special assessment was objected to as being for two purposes, we held it was for a single purpose. This court made the pertinent observation: "A single appropriate general purpose is sufficient to include every expenditure required for that purpose though there may be many items. [Citations] A levy to pay judgments recovered against the county is for a single purpose though there may be a dozen judgments for as many causes of action of different character." The expressions in the cases cited are not mere *dicta* but were used as examples illustrating why the levies there in controversy were single in purpose. Sustaining the objection to the levy for the judgment tax fund was error.

The trial court sustained objections to the following items: "Preparation of new building code, including unpaid bills, $5,000;" "Current for street lighting, including unpaid bills, $708,000;" "Subway lighting, including unpaid bills, $100,500." In *People* v. *Cincinnati, Indianapolis and Western Railway Co.* 224 Ill. 523, the levy contained an item "For payment of county claims (janitor's services, supplies, repairs, improvements and current expenses,) $12,000." In *People* v. *Toledo, St. Louis and Western Railroad Co.* 231 Ill. 498, the county levy contained an item of "Unpaid claims, $2,000." We held that objections to the levy in each case were correctly sustained, because not sufficiently itemized. These cases are relied upon by defendant, but are inapplicable here. It is manifest that "unpaid bills" in each of these items, refers only to bills already incurred for the specific purpose named in the particular item. The purpose of the levy here is for a single object in each case. The fact that some expense for the object has already been incurred is of no consequence. The purpose of itemization is to inform the taxpayer of how his money is to be expended, and each item here complained of accomplishes this purpose as fully as if the levy for each purpose was separated into bills already incurred and expenses to be incurred for the single purpose. The objections to these items should have been overruled.

An objection to the item of "Alteration and rehabilitation of old Criminal Court Building including equipment and furnishings, $75,000.00" was sustained. It cannot be certainly told whether this item contemplates the purchase of new equipment and furnishings, or alteration and rehabilitation of existing equipment and furnishings. It is susceptible of either construction. The taxpayer is entitled to know definitely the object of the appropriation. In *People* v. *Illinois Central Railroad Co.* 361 Ill. 590, we held an item for "city hall furnishings and repairs, $2250,"

was not sufficiently separated. The objection to this item was correctly sustained.

An objection was sustained to the item "To be expended by various departments under the direction of the Mayor and City Comptroller in connection with WPA projects, $25,000.00." So far as the Federal government is concerned, the object is to furnish work relief. Municipalities participate in such projects primarily to secure needed installations of, or improvements or repairs to corporate facilities, and so such works are for corporate purposes. (*People* v. *Otis, ante,* p. 112.) If such projects partially relieve cities of over 500,000 inhabitants from their statutory duty (Ill. Rev. Stat. 1939, chap. 107, par. 14a, p. 2383) to support poor and indigent persons, the result, so far as the municipality is concerned, is only incidental to and is not the primary object of the project. There is no statute in this State authorizing a municipality to engage in any project merely to furnish relief. The delegated authority is for corporate purposes only. In *People* v. *Otis, supra,* the challenged items were for single general purposes. So far as disclosed by the item assailed in the present case, the fund may be used for any corporate purpose, without limitation. (*Peabody* v. *Russel,* 302 Ill. 111.) The court did not err in sustaining the objection to this item.

The judgment of the county court sustaining objections to the appropriations for alteration and rehabilitation of the old criminal court building including equipment and furnishings, and for funds to be expended in connection with WPA projects is affirmed. In all other respects, the judgment is reversed and the cause remanded, with directions to overrule the defendant's objections.

*Affirmed in part, reversed in part,*
*and remanded, with directions.*